[L.A. No. 31600. Feb. 22, 1983.]

JOSEPH L. SHALANT, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

## COUNSEL

Joseph L. Shalant, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Gael T. Infande for Respondent.

## OPINION

**THE COURT.**—We review a recommendation of the State Bar Court that petitioner Joseph L. Shalant, who was admitted to the bar in 1967, be suspended from the practice of law for 90 days, and that such suspension be stayed on conditions of probation which include passing the Professional Responsibility Examination within 1 year from the effective date of our order. As will appear, we have concluded that a public reproval is sufficient discipline for the misconduct at issue here.

Fran S. engaged petitioner to represent her in a personal injury action commenced by her previous attorney, Sidney Shiffman. Petitioner agreed to pay Shiffman's fee out of petitioner's share of any recovery in the action. Petitioner also represented to Shiffman that they would mutually agree upon the amount of Shiffman's fee before petitioner withdrew any fees from his client's trust account.

Petitioner settled client S.'s case for $10,000 and disbursed to S. her agreed percentage of the proceeds. Petitioner then, unilaterally, determined Shiffman's fair fee to be $200 and forwarded to him a check in that amount. Petitioner then withdrew all remaining funds from the trust account.

Shiffman rejected petitioner's tender of $200 and, refusing an offer to arbitrate, sued petitioner *and* client S., seeking $910 for his services. Although petitioner remained in contact with S., and was served with process in Shiffman's suit, he said nothing to S. regarding the suit, and she remained unaware of it until she was personally served a year later.

On being served, client S. called petitioner's office. After he failed to reply promptly, she retained other counsel to defend her in Shiffman's action in which she then filed a cross-complaint against petitioner.

During this same period, petitioner was representing S.'s father, K. In the course of a discussion about another matter, petitioner mentioned to K. that Shiffman's suit and S.'s cross-complaint might be resolved if S. were willing to discuss these matters with petitioner. He then asked K. to suggest such a meeting to his daughter. K. did so, but S., being then represented by other counsel, declined to talk with petitioner.

After conducting hearings on S.'s complaint, the State Bar hearing panel found that petitioner breached his fiduciary duty to communicate with a client (see *Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937]), and wilfully, though indirectly, communicated with a party without permission of her counsel in violation of rule 7-103, Rules of Professional Conduct of the State Bar. The hearing panel recommended that petitioner be privately reproved, on condition that he first pass the Professional Responsibility Examination. The review department added a finding that petitioner had violated rule 8-101 (improper withdrawal of disputed funds from trust account), and recommended a 90-day probationary suspension.

1. *Failure to Communicate*

█ It is reasonable to conclude that an attorney has a duty promptly to inform his client when he becomes aware that the client has been named as a defendant in a civil action. We have found no direct authority on the point. However, the potential prejudice to the client flowing from counsel's withholding of such information is self-evident. Here, petitioner's silence denied client S. the option of choosing whether to retain another attorney thereby avoiding the potential harm and conflict of interest which would follow representation by her codefendant in Shiffman's action. Moreover, the attorney whom she eventually engaged was deprived, for approximately one year, of opportunities to act in her behalf. Thus, we sustain the State Bar's finding that petitioner breached his fiduciary duty to communicate.

## 2. *Communicating With Represented Party*

Additionally, there seems no doubt that petitioner knowingly initiated indirect communication with a party represented by counsel, without such counsel's prior permission. At the hearing, K. testified as follows:

"Q. At any time in the course of [your] conversation did Mr. Shalant ask you to have your daughter contact him?

"K. Yes . . . he suggested that perhaps if my daughter and he could sit down, this situation could be resolved . . . ." Mr. K. further testified that he suggested such a meeting to his daughter, but she rejected the overture. This uncontradicted evidence fully supports the hearing panel's finding and conclusion that petitioner violated rule 7-103.

## 3. *Withdrawal of Trust Funds*

■ The review department, contrary to the conclusion of the hearing panel, concluded that petitioner withdrew disputed funds from his client trust account in violation of rule 8-101(A)(2), which in relevant part provides: "when the right of the member of the State Bar . . . to receive a portion of trust funds is disputed *by the client,* the disputed portion shall not be withdrawn until the dispute is finally resolved." (Italics added.) The review department did not specify which acts it relied on for this finding, and we conclude that its conclusion is unsupported by the record. Rule 8-101 requires an attorney to retain funds in his client trust account only if their ownership is disputed by a client. The funds at issue here, being those remaining in the trust account after disbursement to the client of her share, were claimed by another *attorney,* not the client, and the client had not directed their disbursement in a particular manner. Accordingly, this case does not fall within the proscription of the rule.

The State Bar argues that petitioner indirectly violated rule 8-101 on the theory that he "intentionally failed to communicate the fee dispute [between himself and Shiffman] to Ms. S. in order to deprive her of the opportunity to object to his withdrawal of all but $200 of the attorney fees from his trust account." The State Bar asserts that, given such knowledge, S. might well have requested petitioner to retain sufficient funds in his trust account to satisfy any liability on her part to Shiffman in the event Shiffman prevailed at trial. Petitioner, however, improperly failed to communicate only the fact that S. had been named a party defendant in Shiffman's fee dispute. Even had petitioner dutifully and promptly so informed S., alerting her to the continuing dispute, the information would have come too late to allow S. effectively to "freeze" the trust funds, for petitioner had disbursed all of the settlement funds *before* Shiffman filed his suit. We conclude, accordingly, that the review department erred in finding that petitioner violated rule 8-101.

### 4. *Discipline*

The review department considered petitioner's past disciplinary record, namely, a private reproval in 1979 for misconduct consisting of wilful failure to provide services for which he was hired, including a failure to communicate with his clients. As noted, the review department recommended a 90-day probationary suspension for petitioner's conduct.

After our independent examination of the record, we sustain the State Bar Court's finding that petitioner breached his duty to communicate with his client, as well as his obligation not to communicate with a party represented by counsel without the counsel's permission. We further note that some of petitioner's misconduct, namely, failure to communicate with a client, was of a type for which petitioner previously had been privately reproved. We are unable to accept, however, the State Bar Court's recommendation that petitioner's misconduct deserves a period of probationary suspension, or that he be required to take and pass the Professional Responsibility Examination. Under the circumstances, we believe that a public reproval will constitute sufficient discipline.

We therefore order that petitioner should be, and he hereby is, reproved.

**MOSK, J.**—I dissent.

More than two centuries ago Alexander Pope mused in The Rape of the Lock: "What mighty contests rise from trivial things!"

I deem this entire disciplinary contest to rise from trivial things. It was basically a dispute between two attorneys over the reasonable amount of a fee; it belongs in civil court or in arbitration.

I would impose no discipline and would dismiss the proceeding.

Bird, C. J., concurred.